**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

JOSHUA M. AMBUSH, LLC, *et al.*

      Petitioners,

v.

ELVIS J. RUSNAK,

      Respondent.

Civil Action No. 1:26-cv-01247-CKK

**ELVIS J. RUSNAK'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER OR STAY THIS ACTION**

## I.   INTRODUCTION

Respondent Elvis J. Rusnak, by and through undersigned counsel, respectfully submits this reply in further support of his motion under the first-to-file rule and 28 U.S.C. § 1404(a) for an order: (a) dismissing this action under the first-to-file rule; (b) in the alternative, transferring this action to the United States District Court for the District of Maryland; or (c) in the alternative, staying this action pending resolution of the prior-filed action in the District of Maryland.

The opposition submitted by Petitioners Joshua M. Ambush, LLC and Joshua M. Ambush (together, "Ambush") confirms what Mr. Rusnak's opening motion demonstrated: this action is a duplicative second-filed case that serves no purpose other than to allow Ambush to evade the consequences of their own procedural failures in the District of Maryland. Ambush does not dispute—because they cannot—that Mr. Rusnak filed his Petition to Confirm the Arbitration Award ("Petition to Confirm") in the District of Maryland on March 30, 2026, more than two weeks before Ambush filed this Petition to Vacate the Arbitration Award ("Petition to Vacate") on April 14, 2026. Nor does Ambush dispute that both proceedings involve the same parties, the same arbitration award, and the mirror image of the same central question—whether the February 20, 2026 award should be confirmed or vacated.

Instead, Ambush constructs a series of arguments that, when examined, amount to nothing more than a request that this Court reward Ambush's forum shopping and relieve them of a default entered by another court that they brought on themselves. Ambush's Opposition rests on four principal contentions: (1) that "exceptional circumstances" preclude application of the first-to-file rule; (2) that the pending default in Maryland creates prejudice warranting retention of this action; (3) that transfer under 28 U.S.C. § 1404(a) is not in the interest of justice; and (4) that a stay would

1

impose an undue burden. None of these arguments withstands scrutiny. Each is addressed in turn below.

## II.    ARGUMENT

### A. No Special Circumstances Weigh Against Applying the Ordinary Application of the First-to-File Rule.

Ambush does not dispute that Mr. Rusnak filed his Petition to Confirm the Arbitration Award in the District of Maryland more than two weeks before Ambush filed their Petition to Vacate. Nor does Ambush contest that under the first-to-file rule, a successive and duplicative case is ordinarily dismissed or stayed. *See Wash. Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980) ("[w]here two cases between the same parties on the same cause of action are commenced in two different federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first" (citation modified)). Instead, Ambush argues that: (a) the first-to-file rule is somehow inapplicable to petitions to confirm and vacate arbitration awards; and (b) "exceptional circumstances" counsel against applying the first-to-file rule here. The first argument conflicts with binding Supreme Court precedent. As to the second, no exceptional circumstances apply here that weigh against applying the first-to-file rule.

Ambush oddly places great weight on the Supreme Court's decision in *Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.*, 529 U.S. 193 (2000), asserting that when competing arbitration petitions are filed in different federal courts, the second-filed court has (in Ambush's words) "discretion to manage the proceedings rather than a mandatory obligation to defer to the first-filed action." Ambush Opp'n to Rusnak Mot. to Dismiss, Transfer, or Stay at 1 ("Ambush Opp."), ECF No. 8. This characterization distorts the holding and reasoning of *Cortez Byrd Chips*. The *Cortez Byrd Chips* decision addressed the question of whether the Federal Arbitration Act's venue provisions are permissive or restrictive—holding them permissive—and in so doing, the

Court expressly stated that "under principles of deference to the court of first filing, the [second-filed] court should . . . consider[] staying its hand." 529 U.S. at 198. Far from undermining the first-to-file rule in the arbitration context, *Cortez Byrd Chips* confirmed it. The Court's invocation of *Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 185 (1952), which Ambush points to in their brief, was a directive that when competing petitions are filed, the second-filed court should ordinarily defer to the first.

Ambush's citation to *Cortez Byrd Chips* thus cuts directly against their own position. In *Cortez Byrd Chips*, the party that filed first, Cortez Byrd, sought vacatur, and the Supreme Court indicated that the second-filed court (where the confirmation petition was pending) should have stayed its hand. Here, Rusnak filed first in Maryland. Under the very authority Ambush invokes, it is this Court—the court of second filing—that should defer.

Nor is there anything exceptional about the circumstances of this case that counsel against applying the first-to-file rule. The few cases Ambush cites in which courts declined to apply the first-to-file rule involved bad faith or forum shopping. Ambush Opp. at 5-6. No such circumstances exist here. Mr. Rusnak filed in Maryland because that is where both Petitioners reside, where the arbitration occurred, where the retainer agreement was executed, and where the law governing the dispute originates. Any suggestion that Mr. Rusnak—a New Jersey resident who was injured in a terrorist bombing while serving his country—engaged in forum shopping by filing in his former attorneys' home jurisdiction (i.e., where his opponents reside) is baseless.

Instead, it is Ambush's conduct that reveals a transparent strategy to manipulate the venue in which this dispute will be heard. Mr. Rusnak filed his Petition to Confirm in the District of Maryland on March 30, 2026. Pet. to Confirm Arbitration Award, *Rusnak v. Joshua M. Ambush, LLC* ("Maryland Action"), No. 26-CV-1262 (D. Md. Mar. 30, 2026), ECF No. 1. Rather than

3

respond in that action, Ambush allowed the time for response to lapse—resulting in an entry of default on April 29, 2026. Maryland Action, ECF No. 8. In the interim, on April 14, 2026, Ambush filed this Petition to Vacate in the District of Columbia. ECF No. 1. Ambush thus chose to ignore the Maryland Action while simultaneously filing a competing action here—precisely the kind of gamesmanship that the first-to-file rule is designed to prevent.

Ambush nevertheless contends that this jurisdiction has an "overwhelming interest" in the parties' underlying dispute because (a) Ambush provided legal services in the District of Columbia, (b) the USVSST Fund is located here, and (c) this Court addressed issues related to the Fund in *Rusnak v. United States*, No. 25-292 (D.D.C.). Ambush Opp. at 2–4. These contentions conflate the parties' underlying dispute—a fee dispute between an attorney and client governed by Maryland law—with entirely separate regulatory proceedings involving the federal government.

The controversy at the heart of this action is whether a private arbitration award finding that Ambush breached the standard of care owed to Rusnak under Maryland law should be confirmed or vacated. The arbitration was conducted under the auspices of a former Maryland Supreme Court Justice. The retainer agreement expressly provides that Maryland law and the Maryland Rules of Professional Conduct apply to any disputes arising from the attorney-client relationship. And Joshua M. Ambush LLC itself is a Maryland limited liability company, with Joshua M. Ambush acknowledging that he resides in Maryland.

The fact that the USVSST Fund happens to be partially administered in the District of Columbia[1] is irrelevant to the question before this Court, which is whether the arbitration award should be confirmed or vacated under 9 U.S.C. §§ 9–10. The arbitrator's findings concerned

---

[1] The physical addresses associated with the USVSST Fund are in Oregon—not D.C. *See* "Contact Us", U.S. Department of Justice, *U.S. Victims of State Sponsored Terrorism Fund*, Site Administered by Epiq, https://www.usvsst.com/Home/Contact (last accessed May 28, 2026).

4

Ambush's professional conduct as a Maryland attorney: whether Ambush breached the standard of care under Maryland law, whether Ambush failed to provide informed consent, and whether Ambush failed to file properly and timely in accord with the relevant statute. These are quintessential questions of Maryland legal malpractice law.

Ambush attaches the Memorandum Opinion from *Rusnak v. United States*, No. 1:25-cv-00292 (D.D.C.), suggesting that the prior involvement by another judge in this District with a wholly separate action against the federal government somehow gives it special competence to adjudicate the confirmation of a private arbitration dispute. That decision, however, dismissed Mr. Rusnak's claims against the United States for lack of subject-matter jurisdiction, holding that the Justice for United States Victims of State Sponsored Terrorism Act, 34 U.S.C. § 20144, precludes judicial review of the Special Master's compensation decisions. It did not address Mr. Rusnak's malpractice claims, including the standard of care Ambush owed to Mr. Rusnak or whether Ambush's conduct breached that standard of care. Indeed, *Rusnak v. United States* was rendered solely on jurisdictional grounds, without addressing the merits of *any* claims. Accordingly, nothing in that decision gives this Court any special familiarity with the question now before it: whether an arbitrator correctly applied Maryland malpractice law and the Maryland Rules of Professional Conduct. Those are matters with which the District of Maryland has far greater expertise.

**B. In the Alternative, Transfer Under 28 U.S.C. § 1404(a) Remains Warranted**

**1. Ambush Fails to Rebut the Public Interest Factors**

Ambush argues that "public interest factors do not weigh in favor of transfer given the summary nature of FAA post-arbitration proceedings." Ambush Opp. at 6. But the summary nature of the proceedings *favors* transfer, because it means the Maryland Action can resolve the identical dispute with no greater burden than this Court would face. The critical public interest factor is the

avoidance of duplicative proceedings and inconsistent judgments, a concern that is at its zenith here where confirmation and vacatur are mutually exclusive. *See, e.g.*, *Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 180 (D.D.C. 2007) ("[T]he most significant factor weighing in favor of transferring this case is the presence of closely related litigation…."). As the Supreme Court has cautioned: "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26 (1960).

Nor does Ambush seriously contest that Maryland law governs the underlying dispute, yet another fact that favors transfer. The retainer agreement specifies that Maryland law and the Maryland Rules of Professional Conduct apply. *See, e.g.*, *Onyeneho v. Allstate Ins. Co.*, 466 F. Supp. 2d 1, 4–5 (D.D.C. 2006) (transferring to Maryland in part because "Maryland courts have greater familiarity with Maryland law"). The Arbitrator—a former Justice of the Maryland Supreme Court—applied Maryland law in finding that Ambush breached the standard of care. Ambush's Petition to Vacate necessarily challenges findings rooted in Maryland law. The District of Maryland has far greater familiarity with the substantive law that governs this dispute, and this factor alone is a "significant consideration" favoring transfer. *Id.*

Ambush's attempt to recharacterize this case as one about *Rusnak v. United States*, No. 1:25-cv-00292 (D.D.C.) and the USVSST Fund is a transparent effort to manufacture a nexus to this jurisdiction. As explained above, the arbitration was about whether Ambush committed malpractice under Maryland law and whether Rusnak properly terminated the attorney-client relationship. The Fund is merely the context in which the malpractice occurred; the legal standards

that the arbitrator applied—and that this Court or the Maryland court would apply in reviewing the award—are Maryland standards.

Ambush also dismisses the relative congestion data as "not meaningful in the context of FAA proceedings." Ambush Opp. at 6. Yet the statistics speak for themselves: the District of Maryland has a median time to disposition of 6.7 months compared to 7.3 months in the District of Columbia, a median time to trial of 37.6 months compared to 52.1 months, and only 10.3% of cases pending over three years compared to 22.1% here. Rusnak Mot. to Dismiss, Transfer, or Stay at 8-9, ECF No. 4. These differences are relevant even in summary proceedings, as they reflect the courts' overall capacity to attend to pending matters.

### 2. Private Interest Factors Overwhelmingly Favor Transfer

Ambush asserts that "minimal convenience differences between the District of Columbia and the District of Maryland do not justify transfer." Ambush Opp. at 7. But Ambush ignores that Petitioners' choice of forum is entitled to diminished deference when the petitioners do not reside in the chosen forum. Both Petitioners are Maryland residents. Respondent resides in New Jersey. No party resides in the District of Columbia. Under *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981) and the case law in this Circuit, a plaintiff's choice of a forum where it does not reside is entitled to little or no weight. *See, e.g.*, *Rosales v. United States*, 477 F. Supp. 2d 213, 216 (D.D.C. 2007) ("[T]he fact that [Petitioners] chose to file their lawsuit [in D.C.] is entitled to little deference, if any, because they do not reside in the District of Columbia.").

### C. Ambush's Petition to Vacate Is a Compulsory Counterclaim in the Maryland Action.

Courts ordinarily apply the first-to-file rule or transfer under § 1404(a) when two actions involve a common nuclear of operative fact, often applying Rule 13's "compulsory counterclaim" test. Fed. R. Civ. P. 13(a). Ambush nevertheless claims that its Petition to Vacate "is not a

compulsory counterclaim that was necessary to file in the Maryland Action under Fed. R. Civ. P. 13." Ambush Opp. at 2. This assertion is wrong as a matter of law.

A petition to vacate an arbitration award inherently arises from the same transaction or occurrence as a petition to confirm the same award—they are, by definition, "mutually exclusive" positions on the identical question. *See, e.g.*, *PMS Distrib. Co., Inc. v. Huber & Suhner, A.G.*, No. 91-CV-55285, 1992 WL 356997, at *1 (9th Cir. Dec. 3, 1992) (affirming dismissal of motion to vacate arbitration award where appellee moved to confirm arbitration award, appellant failed to plead counterclaim to vacate award, award was confirmed, and appellant subsequently moved to vacate award); *Hines v. Everest Inst.*, No. 2:13-CV-15219, 2014 WL 2779722, at *2 (E.D. Mich. June 19, 2014) (court "considered motions to vacate and confirm as necessarily arising out of the transaction and occurrence under Rule 13(a) and held that treating them as compulsory advanced Rule 13(a)'s goal of efficiency"); *In re Arb. between InterCarbon Bermuda, Ltd. & Caltex Trading & Transp. Corp.*, 146 F.R.D. 64, 70 (S.D.N.Y. 1993) ("[A] petition to confirm an arbitration award is compulsory in response to a petition to vacate the award.").

The FAA's permissive venue provisions do not exempt a party from the compulsory-counterclaim rule, as Ambush suggests. While the FAA allows a party to choose where to file an initial petition, once a competing petition is filed in another court, the compulsory-counterclaim analysis applies because both claims share the same "nucleus of facts." Here, both the Maryland Action and this case arise from the same arbitration proceeding, involve the same arbitration award, and present the same central question—whether the award should be confirmed or vacated. Ambush's vacatur arguments are properly raised as defenses or counterclaims in the Maryland Action. As the Eleventh Circuit recognized in *Southern Mills, Inc. v. Nunes*, 586 F. App'x 702,

8

706 (11th Cir. 2014), declining to fragment a case about a single arbitration award into two suits avoids multiplicitous proceedings and potentially conflicting judgments.

### D. Ambush's Attempts to Manipulate the Venue by Allowing a Default in the Maryland Weigh Against Proceeding with this Action.

Ambush also argues that dismissal and transfer would "effectively force Ambush to forfeit a statutory right to seek vacatur, or to pursue that right only through the Maryland forum." Ambush Opp. at 6. This framing is misleading. Ambush had every ability to raise its vacatur arguments as defenses or counterclaims in the Maryland Action, where the same award is at issue. The FAA does not guarantee a party the right to select any forum it prefers; it provides permissive venue options, subject to the ordinary rules governing duplicative litigation.

Ambush's principal argument for overcoming the first-to-file rule is that the default entered against it in the Maryland Action creates "prejudice" that would prevent meaningful review of its vacatur claims. Ambush Opp. at 5–6. This argument is extraordinary: Ambush seeks to benefit from their own failure to respond to a properly served petition in a federal court. The default entered on April 29, 2026, resulted from Ambush's apparently intentional failure to timely appear and respond to the Maryland Action. A party cannot create "exceptional circumstances" through its own procedural defaults and then invoke those self-inflicted wounds as a reason for another court to exercise jurisdiction over the same dispute.

Ambush acknowledges that they have since filed motions to dismiss for insufficient service of process under Fed. R. Civ. P. 12(b)(5) and to set aside the entry of default under Fed. R. Civ. P. 55(c). These motions are pending in the Maryland Action. If Ambush believes service was deficient, the proper remedy is to pursue that argument *in Maryland*—not to file a duplicative

9

action in this Court as a hedge against the possibility that their Maryland motions will be denied.[2] The existence of pending procedural motions in a first-filed action is not an "exceptional circumstance" that vitiates the first-to-file rule or favors transfer; it is the ordinary course of litigation.

### E.  A Stay Is Warranted If the Court Declines to Dismiss or Transfer

In the alternative to dismissal under the first-to-file rule, or transfer under § 1404(a), Mr. Rusnak seeks a stay of this action under the first-to-file rule. In response, Ambush contends that a stay requires a "heavy burden of necessity" that Rusnak has not met. Ambush Opp. at 7–8. This misstates the applicable legal standard.

In *Cortez Byrd Chips*, the Supreme Court stated that when petitions to confirm and vacate an arbitration award are filed in different courts, the second-filed court should "consider[] staying its hand." 529 U.S. at 198. In this Circuit, trial judges have broad discretion to manage their dockets and to stay proceedings in deference to a first-filed action. *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 349 (D.C. Cir. 2003). The question is not whether the movant has demonstrated "necessity," but whether the interests of judicial economy and the avoidance of inconsistent results counsel in favor of deferring to the first-filed proceeding.

---

[2] Ambush's Rule 12(b)(5) motion for insufficient service of process in the Maryland Action is frivolous. Section 9 of the Federal Arbitration Act ("FAA") expressly provides that, where the adverse party is "a resident of the district within which the award was made," service of a petition to confirm an arbitration award "shall be made upon the adverse party or his attorney as prescribed by law for *service of notice of motion*." 9 U.S.C. § 9 (emphasis added). Because the procedure for serving motions is governed by Federal Rule of Civil Procedure 5(b), service of petitions to confirm arbitration petitions on residents is governed by Rule 5(b). *See, e.g.*, *Dalla-Longa v. Magnetar Cap. LLC*, 33 F.4th 693, 695–96 (2d Cir. 2022) ("Here, the 'adverse party' . . . was a 'resident' of New York for these purposes, and the petition to vacate was filed in the United States District Court for the Southern District of New York. Hence, the applicable law is Federal Rule of Civil Procedure 5, which governs the serving and filing of pleadings and other papers in the Southern District of New York."); *O'Neal Constructors, LLC v. DRT Am., LLC*, 991 F.3d 1376, 1379 (11th Cir. 2021) ("The relevant Federal Rule of Civil Procedure is Rule 5, which addresses service of pleadings and other papers."). Ambush's motion nevertheless contends, contrary to the FAA's plain language and decisions from courts around the country applying Rule 5(b) to resident service of a confirmation petition, that Rule 4(e) applies.

Ambush further argues that "FAA confirmation and vacatur proceedings are streamlined processes that can proceed in parallel without material duplication." Ambush Opp. at 7. This is demonstrably false. If this Court vacates the award while the District of Maryland confirms it, the result would be "patently inconsistent decisions." *Hypower, Inc. v. Sunlink Corp.*, No. 14-CV-740, 2014 WL 1618379, at *3 (N.D. Cal. Apr. 21, 2014). That is precisely the circumstance that the first-to-file rule, transfer under § 1404(a), and the court's inherent stay authority are designed to prevent. Moreover, Ambush's assertion that "staying this action would simply delay Ambush's access to judicial review of the vacatur claims without any corresponding benefit to judicial economy" is belied by the reality that Ambush had every opportunity to raise their vacatur arguments in the Maryland Action. Ambush Opp. at 8. There is no deprivation of rights; there is merely a requirement that the dispute be resolved in one forum rather than two.

## III.    CONCLUSION

Ambush's Opposition identifies no genuine special circumstance that would overcome the priority of the first-filed Maryland Action. Their arguments regarding the default are self-defeating—the default results from Ambush's own failure to respond, and Ambush has remedies available in Maryland to address it. In the alternative, the public and private interest factors overwhelmingly favor transfer. And at a minimum, the risk of inconsistent judgments on the identical arbitration award warrants a stay of this proceeding. This Court should decline Ambush's invitation to reward forum shopping and procedural gamesmanship.

For all of the foregoing reasons, Respondent Elvis J. Rusnak respectfully requests that this Court enter an order: (a) dismissing this action under the first-to-file rule; (b) in the alternative, transferring this action to the United States District Court for the District of Maryland pursuant to

11

28 U.S.C. § 1404(a); or (c) in the alternative, staying this action pending the resolution of the Maryland Action.


Dated: May 29, 2026                                    Respectfully submitted,

                                                       /s/ Robert A. Braun
                                                       Robert A. Braun
                                                       D.C. Bar No. 1023352
                                                       Cohen Milstein Sellers & Toll PLLC
                                                       1100 New York Ave. NW, Suite 800
                                                       Washington, DC 20005
                                                       Tel: (202) 408-4600
                                                       Fax: (202) 408-4699
                                                       rbraun@cohenmilstein.com


                                                       *Counsel for Respondent Elvis J. Rusnak*